GALVESTON, H. & S. A. RY. CO. v. WILSON. (No. 2093.)

Court of Civil Appeals of Texas. El Paso. Dec. 15, 1927.

Rehearing Denied Jan. 5, 1928.

Carriers ⬩⮞202—Purchaser of cotton need not assign concentration rights to owner having right to refund of freight paid for concentration on subsequent reshipment.

Where regulation of Interstate Commerce Commission permitted shipment of cotton for concentration with right of refund to shipper of freight paid for concentration on reshipment therefrom, but requiring indorsement on inbound expense bills if last shipment is made by one other than shipper, an assignment of concentration rights by purchaser was unnecessary to authorize recovery thereof by owner already having right applicable to any cotton which might be shipped out.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Action by A. M. Wilson against Terrazas & White, wherein the Galveston, Harrisburg & San Antonio Railway Company was made garnishee. From the judgment, garnishee appeals. Affirmed.

Kemp & Nagle, of El Paso, for appellant.
C. M. Wilchar and Gowan Jones, both of El Paso, for appellee.

HIGGINS, J. Appellee sued Terrazas & White and garnished the appellant. The latter answered, admitting an indebtedness to the principal defendants upon certain "concentration claims," but sought to offset against the same the sum of $536.58 which it was claimed had been previously improperly refunded by it to Terrazas & White. Upon trial without a jury the asserted offset was disallowed, and the garnishee appeals. The refund in question had been made upon a concentration claim of Terrazas & White upon 305 bales of cotton.

A cotton mill is located at El Paso, Tex. A regulation of the Interstate Commerce Commission reads:

"*Concentration and Transfer of Expense Bills at Cotton Factory Points on Cotton Not Consigned to Cotton Mills:* At concentration points where cotton factories are located, concentration charges shall not be adjusted unless accompanied by a certificate, over individual or firm signature, that none of the cotton or linters covered by inbound expense bills has been sold to or delivered to cotton mills. In addition when cotton or linters has changed ownership at concentration points, the original consignee must indorse on back of expense bills, at the time of sale, certificate in substantially the following form: 'The cotton (or linters) covered by this expense bill has been sold to ——— and none of the said cotton (or linters) has been sold to or delivered to cotton mills.'"

The right to a concentration refund as applied to the present case arises in this way: Cotton is shipped for concentration at El Paso, for compressing and other purposes, from nearby stations east of El Paso upon appellant's line and the freight paid thereon. It is then shipped from El Paso over appellant's line to eastern points. The shipper from El Paso, if he was also the inbound shipper, is then entitled to a refund of the freight paid for concentration at El Paso. If the last shipment is made by one other than the shipper into El Paso, then the shipper out of El Paso cannot recover back the inbound freight unless the inbound expense bills bear the indorsement prescribed by the regulation quoted above.

Terrazas & White made various shipments of cotton to El Paso. They also bought cotton shipped to El Paso by other parties. Proper indorsements were made upon the expense bills of the cotton shipped in by these other parties. Terrazas & White made no indorsements upon the expense bills of cotton which they had themselves shipped in. They thus held inbound expense bills for more than 305 bales of cotton.

On December 4, 1925, garnishee issued a uniform order bill of lading for 100 bales of cotton; destination, Galveston, Tex.; Smith-Wilson Company, consignor and consignee.

"On the face of this bill of lading were these indorsements: 'This cotton was bought of Terrazas & White and any concentration rights hereby assigned to them.' Also: 'The cotton covered by this B. L. was sold to Terrazas & White 12/4/26 and concentration privilege assigned to them.' Smith-Wilson Company, by M. W. Lourie, Jr."

On December 28, 1925, garnishee issued two bills of lading of the same kind as the above for 100 bales each. The same indorsements were made on these two bills of lading as upon the first, the Smith-Wilson indorsements being dated 12/28/25. These three bills of lading were also indorsed in blank on the back by Smith-Wilson Company. The cotton described in these three bills was the cotton on which the refund of $536.58 was made by garnishee, and which it claims was improperly made because the inbound expense bills had not been indorsed by Terrazas & White to Smith-Wilson Company in the manner prescribed by the quoted regulation.

Appellant's rate expert, C. B. Jonz, testified:

"If a party ships it in here and turns around and ships it out over the same road, and complies with the requirements of the railroad company, he has a concentration claim. That cotton shipped in here does not have to be shipped out in order to make a concentration claim, but you may ship out other cotton in lieu of the

cotton you ship in. The identity of the cotton does not have to be maintained at concentration points; in other words, the shipper may ship in 500 bales of cotton and tomorrow may ship out a hundred bales, and the next day another hundred bales, and then the day after that 300 bales, the identity of the cotton is never questioned. The shipper does not have to be the same. Smith-Wilson cannot ship out Terrazas & White's cotton without a transfer of ownership. Terrazas & White can ship cotton in here and then sell it to Smith-Wilson, and they can ship it out."

"If concentration privilege is granted on 305 bales, then that cotton has got to be shipped out or some other cotton has got to be shipped out before there is a complete concentration claim, and the identity of the cotton does not have to be maintained, bale for bale. The shipper that ships in here doesn't have to be the shipper that ships out. When a shipper ships cotton in here, and there is no transfer of ownership of that cotton, and he ships the cotton out, nothing is necessary to be done to establish any concentration claim so far as ownership is concerned; he does have to certify that he has not sold any to mills; so far as ownership is concerned, it would be shipped in to you and you ship it out."

"If Smith-Wilson had shipped the 305 bales of cotton which actually belonged to Terrazas & White; that is, shipped for them, but in the name of Smith-Wilson, Terrazas & White could be entitled to collect their concentration claim if they showed it was their cotton shipped. If the concentration claim was transferred to Terrazas & White they would be entitled to their concentration claim. If the bill of lading was indorsed: 'The cotton covered by this bill of lading was sold to Terrazas & White 12/28, and concentration privilege assigned them,' they would be entitled to the concentration claim."

"If Terrazas & White had sold this cotton to other parties, and the other parties were trying to collect the refund, there must be the indorsement upon these expense bills under our regulations before the railroad company is authorized to pay."

"Terrazas & White in the beginning were the owners of these freight bills, and if they had bought cotton from Smith-Wilson Company, 305 bales from Smith-Wilson, and shipped this cotton over this road, that matured the right they had to collect the concentration claims. The statements on the bills of lading speak for themselves. If Smith-Wilson had presented this claim for concentration, then there would have been an indorsement on each and every one of these freight bills to Smith-Wilson Company, but Smith-Wilson has made no claim for any concentration."

"There could not have been but two possible persons that were interested in this refund, that was Smith-Wilson & Company and Terrazas & White. We have a signed statement that they made no claim at all for any concentration claim whatsoever on this shipment by Smith-Wilson Company. By reason of that, if Smith-Wilson had 305 bales in, of course, they could not use the concentration claim on this 305 bales out; on the other hand, if they had this 305 bales and it was 'free cotton,' as we term it, why they were not entitled to a concentration refund at

all. If Terrazas & White had shipped this 305 bales of cotton, they were entitled, under the rules and regulations, to this refund which they received at the time, undoubtedly."

If Smith-Wilson Company were the ones to whom the refund had been made, it would have been improperly made because the inbound freight bills had not been properly indorsed to them. But such was not the case. The refund was made to Terrazas & White who had valid concentration claims on more than 305 bales. When Smith-Wilson Company transferred to Terrazas & White the three bills of lading for 305 bales, the right of Terrazas & White to the refund became complete in view of the testimony of Mr. Jonz that the identity of the cotton did not have to be maintained and that Terrazas & White could apply their concentration claim on cotton acquired from others and shipped out by them. The first-quoted indorsement upon the bills to the effect that the cotton was bought of Terrazas & White and concentration privileges assigned to them apparently has no bearing upon the question, for it made no difference from whom Smith-Wilson Company acquired the cotton, and no assignment of concentration rights to Terrazas & White was necessary for the latter already had such rights applicable to any 305 bales which might be shipped out by them. So far as we can understand this technical subject, the regulation quoted has no application to the present facts, and it seems the refund was properly made Terrazas & White under the testimony of appellant's expert witness upon the subject, Mr. Jonz.

Affirmed.